NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1413
(Interference No. 105,507)

SCOTT PIVONKA and JOHN TOTTLEBEN,

Appellants,

v.

GLENN AXELROD and WALTER LEE,

Appellees.

Ramon L. Pizarro, Attorney at Law, of Denver, Colorado, argued for appellants.

Steven J. Grossman, Grossman Tucker Perreault & Pfleger, PLLC, of Manchester, New Hampshire, argued for appellees. With him on the brief was Beth A. Filip.

Appealed from:    United States Patent and Trademark Office
                 Board of Patent Appeals and Interferences

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1413
(Interference No. 105,507)

SCOTT PIVONKA and JOHN TOTTLEBEN,

Appellants,

v.

GLENN AXELROD and WALTER LEE,

Appellees.

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED: February 19, 2009

_____

Before MICHEL, Chief Judge, SCHALL and PROST, Circuit Judges.

PROST, Circuit Judge.

Scott Pivonka and John Tottleben (collectively, "Pivonka") appeal the March 11, 2008 decision of the United Sates Patent and Trademark Office, Board of Patent Appeals and Interferences ("Board") declaring claims 1-9 of Pivonka's U.S. Patent No. 6,408,797 ("'797 patent"), entitled "Collapsible Pet Carrier," unpatentable under 35 U.S.C. § 103. For the reasons set forth below, we affirm.

## I. BACKGROUND

In April 2003, Glenn Axelrod and Walter Lee (collectively, "Axelrod"), the owners of U.S. Application 09/914,047 ("'047 application"), requested that the Board declare an interference with the '797 patent. In his request for interference, Axelrod described a chain of continuation applications leading to the '047 application that, in Axelrod's view, positioned Axelrod as the senior party. On October 24, 2006, the Board declared an interference. However, the Board determined that Axelrod incorrectly relied on two prior applications to support his claim for seniority, and, without those two applications, Pivonka was the senior party and Axelrod was the junior party for the purposes of the interference. Axelrod v. Pivonka, Interference No. 105,507, at 3 (B.P.A.I. Oct. 24, 2006). Because Axelrod believed he was the senior party, he did not submit prima facie evidence of priority with his request for interference, as required of junior parties by 41 C.F.R. § 41.202(d). However, the Board granted Axelrod twenty days from the date of its order to submit evidence satisfying § 41.202(d) because "it was not wholly unreasonable for Axelrod to think that it would be senior party when and if the interference is declared," and because the declared count differed from the count proposed by Axelrod. Id. at 3-4. Axelrod submitted evidence during the allotted time, which the Board accepted as sufficient under § 41.202(d). Axelrod v. Pivonka, Interference No. 105,507, at 1 n.1 (B.P.A.I. Dec. 21, 2006).

During the interference, Axelrod filed a motion asserting that claims 1-2 and 4-9 of the '797 patent are anticipated under 35 U.S.C. § 102(b) by U.S. Patent No. 4,940,016 ("Heath"), and claim 3 is obvious under 35 U.S.C. § 103 in light of Heath and U.S. Patent No. 3,195,506 ("Beard"). The Board denied Axelrod's motion, but set forth

its own view that claims 1-9 of the '797 patent are obvious and ordered Pivonka to file a response showing why a judgment of invalidity should not be entered against claims 1-9. Axelrod v. Pivonka, Interference No. 105,507 (B.P.A.I. Aug. 30, 2007) ("First Obviousness Opinion"). After considering Pivonka's response to the Board's obviousness determination and Axlerod's reply, the Board declared the claims invalid. Axelrod v. Pivonka, Interference No. 105,507 (B.P.A.I. Mar. 11, 2008).

Pivonka timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

Pivonka alleges that the Board committed two errors. First, Pivonka argues that the Board abused its discretion by permitting the interference to proceed in the first instance. Specifically, Pivonka takes issue with the Board's decision to give Axelrod a second chance to submit evidence to show priority under 37 C.F.R. § 41.202(d), and its decision that Axelrod's submissions were sufficient to create a prima facie case of priority under 37 C.F.R. § 41.202(e). Second, Pivonka argues that the Board did not properly apply the law during its obviousness analysis. We address each argument in turn.

## A. 37 C.F.R. § 41.202(d)-(e)

We conclude that Pivonka waived his objections to the Board's decision to proceed with the interference. With respect to the Board's discretionary decision to give Axelrod an additional opportunity to submit evidence of priority, Pivonka does not cite to anything in the record that can be construed as an objection. Instead, Pivonka simply argues that he "was not entitled to present its position" at that time. Appellant's Reply Br. 1. However, Axelrod pointed out at oral argument that Pivonka could have filed a

"miscellaneous motion" as provided for by 37 C.F.R. § 41.121(a)(3). Because Pivonka did not present us with any reason why he could not have filed such a motion, we conclude that this argument was waived. See In re Watts, 354 F.3d 1362, 1367 (Fed. Cir. 2004) ("[I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the Board. We have frequently declined to hear arguments that the applicant failed to present to the Board.").

Similarly, we find that Pivonka waived his objection to the Board's decision that the evidence submitted by Axelrod was sufficient to satisfy 37 C.F.R. § 41.202(e). Pivonka cites part of his filing of a list of intended motions as the sole evidence that he objected to the Board's finding on this issue. However, the excerpt of the filing that Pivonka relies on did not purport to object to the Board's determination of sufficiency under § 41.202(e). Instead, it alleged that the disclosures in Axelrod's applications did not satisfy 35 U.S.C. § 112 with respect to the count because they did not teach hingedly attached endwalls. In the excerpt, Pivonka supported this argument with an assertion that the photographs included in Axelrod's submission did not show a door that was hingedly attached to the floor panel. J.A. 176-77. This excerpt makes no reference to either the Board's § 41.202(e) determination or the bulk of the evidence Axelrod submitted in response to the order to show cause, which included affidavits from Axelrod himself, one of the employee's of Axelrod's company, and an architect hired by Axelrod to make drawings of the pet carrier, as well as drawings of the pet carrier made by the architect. We cannot reasonably construe this excerpt as an objection to the Board's finding that the interference could proceed because Axelrod's

evidence was sufficient under § 41.202(e). Accordingly, we conclude that Pivonka waived this argument by failing to raise it below. See Watts, 354 F.3d at 1367.

## B. The Board's Obviousness Determination

On review of the Board's obviousness determination, we review the Board's factual determinations for substantial evidence, and its legal conclusion de novo. In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000).

Pivonka alleges three errors in the Board's obviousness determination: (1) the Board improperly defined the invention as having a "barn-like structure"; (2) the Board failed to consider each of the nine claims of the '797 patent individually; and (3) the Board did not appreciate the structural differences and functional benefits provided by the claimed invention as compared to the prior art.

Claim 1 of the '797 patent, with emphasis added, recites:

A collapsible pet housing structure comprising:

a floor panel having a pair of parallel sides and a pair of ends extending between the sides;

a pair of generally opposing walls hingedly attached to the parallel sides of said floor panel, each wall comprising at least two generally planar wall panels connected to one another by a hinge connection, each of the wall panels having an external surface and an internal surface, the internal surface of the wall panels of one wall facing the internal surface of the wall panels of the opposing wall, the hinged connection between the wall panels allowing the wall panels to cooperate with one another to retain the external surfaces of the wall panels at an angle greater than 180 degrees relative to one another, so that the hinged connection allows movement of the wall panels from:

a first position where the external surfaces of the wall panels are at an acute angle relative to one another to

a second position where the external surfaces of the wall panels are retained at an angle greater than 180 degrees relative to one another;

2008-1413                          5

a roof panel, the roof panel being of a weight and extending between the walls and being hingedly connected to said walls; and

a pair of endwalls, each endwall being hingedly attached to said floor panel at opposing ends of the floor panel, the endwalls pivoting to a generally normal position with said floor panel to cooperate with said wall panels when said wall panels are in said second position to retain the external surfaces of the wall panels at the second position relative to one another, so that the roof panel is supported by said endwalls when said wall panels are at the second position.

We find no reversible error in the Board's use of the term "barn-like shape" to distinguish Pivonka's invention from the rectangular collapsible pet carrier disclosed in Beard. Pivonka is correct that the Board must analyze the claim language, not its own interpretation of what the claim covers. We conclude, however, that the Board simply used the term "barn-like shape" to distinguish between collapsible pet carriers with external wall surfaces at an angle of exactly 180 degrees relative to each other, such as the one in Beard, and those with external wall surfaces at an angle greater than 180 degrees relative to each other, as described in claim 1. We discern no harm in the Board's use of this shorthand.

We also conclude that, before the Board, Pivonka waived any argument that claims 2-9 do not stand or fall with claim 1. In his response to the first obviousness opinion, Pivonka did not make any arguments that any of claims 2-9 contained additional limitations that rendered those claims nonobvious. Instead, Pivonka focused his entire response on the Board's allegedly improper use of the term "barn-like shape" and the prior art's failure to disclose a container that collapses from a second position where the wall panels are at an angle greater than 180 degrees relative to each other to a first position where the wall panels are at an acute angle relative to each other. J.A.

184-94.  Therefore, Pivonka cannot now argue that claims 2-9 contained additional limitations that warrant a conclusion of nonobviousness.  See Watts, 354 F.3d at 1367.

Finally, we agree with the Board that claims 1-9 are obvious in light of Heath, Beard, and U.S. Patent No. 5,465,686 ("Monetti").  The first affidavit of Axelrod's expert, Dr. Shina, provides substantial evidence to support the Board's finding that ordinary skill in the pertinent art consists of knowledge of basic mechanical principles, including knowledge of the relative movement of parts and hinges, and "experience and training in moving panels and hinges, made of different materials."  First Obviousness Opinion at 14; see also J.A. 237-38.  The prior art disclosed a pet container that collapsed from a position where the side walls were fixed at an angle of exactly 180 degrees relative to one another.  See Beard, figs.1, 3.  It also disclosed pet containers that, while they did not collapse in the same manner as Pivonka's invention, had side walls that were fixed at an angle greater than 180 degrees relative to each other.  See Monetti, fig.1; see also Heath, fig.1.  Dr. Shina's second affidavit, which was unrebutted, stated that one of ordinary skill in the art would have recognized the benefits of a container that can maintain a position where the side walls are at an angle greater than 180 degree relative to each other.  J.A. 317-18.  Specifically, Dr. Shina's second affidavit described why a person of ordinary skill in the art would recognize that such a container would, as compared to Beard, be more resistant to buckling when forces were applied to the side walls.  J.A. 320-21.  Dr. Shina's affidavit also stated that one of ordinary skill in the art would have recognized that a collapsible container with side walls at an angle greater than 180 degrees relative to each other would be more stable because the weight of the roof would help to hold the side walls in place in the second position and the sidewalls

must, prior to collapse, pass through a position in which they are at an angle of exactly 180 degrees relative to each other. J.A. 323. Finally, Dr. Shina's unrebutted affidavit stated that a person of ordinary skill in the art would have had no difficulty building a container that could collapse in the manner shown in Beard from a position in which the external walls were, as in Heath and Monetti, at an angle greater than 180 degrees relative to each other to a position where those walls formed an acute angle, as in the collapsed Beard container. J.A. 317-18.

Under KSR International Co. v. Teleflex, Inc. "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 550 U.S. 398, 1739 (2007). According to Dr. Shina's unrebutted affidavit, both the structural benefits and the way in which to build the container claimed by Pivonka were readily apparent to a person of ordinary skill in the art. Accordingly, we find no error in the Board's conclusion that claims 1-9 are obvious.

## III. CONCLUSION

For the foregoing reasons, we affirm the Board's determination that claims 1-9 of the '797 patent are unpatentable under 35 U.S.C. § 103.