NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

## IN RE SCOTT P. SCHREER

---

2012-1564

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences in Serial No. 10/086,089

.

---

Decided: May 21, 2013

---

MICHAEL F. SARNEY, Katten Muchin Rosenman, LLP, of New York, New York for appellant. With him on the brief was SAMSON HELFGOTT.

NATHAN K. KELLEY, Deputy Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia for appellee. With him on the brief were MONICA B. LATEEF and ROBERT J. MCMANUS, Associate Solicitors.

---

Before RADER, *Chief Judge,* LOURIE and O'MALLEY, *Circuit Judges.*

PER CURIAM.

The Board of Patent Appeals and Interferences (Board) affirmed the rejection of Scott P. Schreer's (Appellant's) United States Application No. 10/086,089 (the '089 application). Because the Board correctly determined that the claims would have been obvious to one of ordinary skill in the art at the time of invention, this court affirms.

## I.

Songwriters, composers, lyricists, music publishers, and owners of audio work (*i.e.*, copyright holders) are legally entitled to receive royalty payments whenever their copyrighted musical creations are publicly performed. For a variety of reasons, however, payment is not always received. The '089 application, filed on February 28, 2002, seeks to cure this problem by claiming a method of compensating copyright holders. Generally speaking, the claimed method consists of embedding identification information in an audio file, broadcasting the audio file in a public broadcast, receiving the audio file by a monitoring station, correlating the identification information to a copyright holder, and then compensating the copyright holder.

In a Final Office Action, the examiner rejected claims 1–7 under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 6,253,193 (Ginter) in view of U.S. Patent No. 6,385,596 (Wiser). The examiner rejected claims 8–11 under 35 U.S.C. § 103(a) as being unpatentable over Ginter, in view of Wiser, and in further view of an industry publication (BMI). The Board affirmed these rejections. On appeal to this court, Appellant does not dispute the Board's findings in regard to Wiser or BMI, nor does he dispute that any of the above references can be combined. The only issue on appeal is whether Ginter teaches or renders obvious a "public broadcast" as recited in representative claim 1.

Although Appellant raises additional arguments, these arguments were never raised in front of the Board and are therefore waived. *In re Watts*, 34 F.3d 1362, 1367 (Fed. Cir. 2004). Indeed, Appellant only presented a single issue to the Board which is therefore properly before this court: "[I]n understanding whether Ginter teaches [the claimed limitation,] it is important to determine whether or not Ginter teaches a public broadcast." J.A. 784; *see also* J.A. 812–19.

Claim 1 recites:

1. A method of compensating at least one rights holder responsible for content of a digital audio recording file for the public performance of the content, the content being included in a public broadcast, the method comprising the steps of:

associating an identification with the digital audio recording file to produce an identified digital audio recording file;

generating an identification record correlating the identification and the digital audio recording file;

broadcasting the identified digital audio recording file as an audio signal in the public broadcast, the public broadcast being made by one of a radio, television, cable, satellite network and internet website, the public broadcast capable of being remotely receivable simultaneously by a plurality of audience members of the public capable of receiving the audio signal being publicly broadcast;

receiving by a monitoring station the audio signal being publicly broadcast;

feeding by said monitoring station the audio signal into monitoring means for detecting the identification;

storing and correlating by said monitoring station the identification and data solely related to the public broadcast and unrelated to whether even any user constituting the audience members of the public have received the broadcast, based on the identification record as a batch file;

importing the batch file into a first database that catalogs public performance, based upon the incidence of the public broadcast and unrelated to the number of actual audience users of the audio signal, and

using the first database to compensate the at least one rights holder.

J.A. 787

## II.

This court reviews factual findings of the Board for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Claim construction is a question of law and is reviewed *de novo*. *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997). Claims appealed from the Board are given their broadest reasonable interpretation in light of the specification. *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990). The ultimate conclusion of obviousness is a legal question reviewed *de novo* based on underlying factual determinations. *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004).

## III.

This court first considers whether the Board properly construed the term "public broadcast" to mean "[t]o transmit (a radio or television) program for public or general use." J.A. 807. This court finds no error in the

Board's construction. The '089 specification does not assign any explicit definition to the term, and Appellant admits that the Board's construction is within the term's ordinary meaning. Appellant's Br. 27. Furthermore, the Board's construction is consistent with the claim language, and is also consistent with Appellant's own remarks during prosecution. For example, during prosecution, Appellant remarked, "Accordingly, the use in the specification, the common use of broadcast[,] and one that is generally understood by all is that broadcast is a performance on a radio or television or the like which is sent publicly to many end users." J.A. 536.

The Board's construction is therefore well within reason, and Appellant's arguments to the contrary are unpersuasive. Moreover, this court finds Appellant's proposed construction—"a transmission of sound or images to the population in general, through radio or television"—does not present a difference from the Board's construction that would affect the outcome of this appeal.

IV.

Next this court considers the teaching of Ginter with respect to the term "public broadcast." In general, the Ginter reference, titled "Systems and Methods for the Secure Transaction Management and Electronic Rights Protection," discloses a "Virtual Distribution Environment" (VDE) that monitors and controls information distributed through its system. *E.g.*, Ginter col. 2 ll. 24–27. Files, such as digital audio files, are associated with identification information to produce an identified file called a "VDE object." *Id.* col. 58 ll. 43–46. The VDE objects are broadcast in a public broadcast, as explained below, and received by a monitoring station. *Id.* col. 65 ll. 59–65. The monitoring station uses the identification information in the VDE object to generate usage metering, audit trail mapping, fingerprinting, and other infor-

mation. *Id.* fig. 25C. Owners and distributors of works use this information for billing. *Id.* col. 3 ll. 20–24.

Substantial evidence supports the Board's finding that Ginter teaches a "public broadcast." Ginter teaches that "VDE supports a 'universe wide' environment for electronic content delivery [and] broad dissemination." *Id.* col. 13 ll. 27–29. Such broad dissemination can include providing content through radio, television, live performance, data streams, "real-time" teleconferencing, and on-line bulletin boards. *Id.* col. 14 ll. 5–28; col. 27 ll. 56–61; col. 260 ll. 11–23. Moreover, content "may be freely distributed on CD-ROM disks, through computer networks, or broadcast through cable or by airwaves." *Id.* col. 254 ll. 30–34.

Appellant argues that Ginter does not teach a public broadcast because users must pay a fee or be authorized to receive content. To the contrary, Ginter does not preclude owners and distributors from granting unrestricted access to a multitude of users. Ginter col. 260 ll. 11–23 ("[T]he preferred embodiment of the present invention can be modified to meet these changes for broad use, or more focused activities."). Moreover, simply requiring a fee to view a broadcast (such as a "Pay-Per-View" event) does not make the broadcast non-public. In addition, claim 1 of the '089 application recites a "public broadcast being made by [a] . . . cable [or] satellite network." Yet, Appellant admits that "[s]atellite and cable transmissions . . . are for use only by those who pay to receive them." Appellant's Br. 24. Finally, as Appellant acknowledges, broadcasts that do not require a fee or authorization were well-known in the art at the time of invention. Appellant's Br. 23–24.

In sum, substantial evidence supports the Board's conclusion that Ginter discloses a public broadcast. Because this is the only ground properly before the court

on which Appellant argues the claims of the '089 application should have been allowed, this court affirms.

**AFFIRMED**